UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NANCY McCARTHY, ) | | |
|     Plaintiff, ) | | |
| ) | | |
|   vs. ) | | 1:08-cv-578-RLY-JMS |
| ) | | |
| FINANCIAL STRATEGIES MORTGAGE, ) | | |
| INC., ) | | |
|     Defendant. ) | | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Nancy McCarthy ("McCarthy"), began working for Defendant, Financial Strategies Mortgage, Inc. ("FSM"), as an account executive on April 20, 2007. Initially, McCarthy's immediate supervisor was Alan Griffin, FSM's Executive Vice-President. At the time of her hire, FSM offered its employees group medical insurance and other benefits through a plan insured and administered by Principal Financial Group ("Principal").[1] When she was hired, McCarthy was told that she would be entitled to these group benefits effective July 1, 2007. The specific plan language dealing with eligibility for medical insurance stated as follows:

---

[1] There were actually two different group health insurance plans offered by Principal for FSM's employees to choose from. Without combing every policy provision, the primary difference appears to be the type and amount of deductible the employee selects. Although the application form which McCarthy completed to enroll in the insurance plan did not delineate the two options, the language regarding eligibility for coverage is what is relevant to this dispute, and the two plans do not differ in that regard.

1

**Eligibility**
To be eligible for insurance you must be a Member.

**Member** means any person who is a Full-Time Employee of the Policyholder [FSM]. ...
... you will be eligible on the first day of the Insurance Month coinciding with or next following the date you complete the Waiting Period.

The Waiting Period is a period of 60 consecutive days during which you are continuously employed as a Member.

Prior to the start of her employment with FSM, McCarthy had an individual health insurance policy with Anthem Insurance. McCarthy submitted her application for inclusion in the FSM sponsored benefit program on June 28, 2007, after working full-time for a little more than two months. On that same day or the following day, Tara Hibbard, an FSM employee responsible for handling the insurance enrollment process, entered the relevant information from McCarthy's benefits application into the electronic database utilized by Principal for keeping track of each policy holder's "members." The electronic entry indicated that McCarthy worked 40 hours per week. Once FSM electronically entered the appropriate information from an employee's application for benefits, decisions with regard to eligibility, claims and benefits rested with Principal.

In May 2007, during the first two months of her employment with FSM, McCarthy was diagnosed with lung cancer. McCarthy recalls telling Mr. Griffin's assistant that she was diagnosed with lung cancer, but could not identify who else at FSM she may have spoken to regarding her diagnosis. In June 2007, Anthem sent a letter to McCarthy

indicating her insurance would be cancelled effective June 30, 2007. McCarthy testified at her deposition that the letter she received from Anthem indicated the reason for the cancellation was her diagnosis of lung cancer. However, in her sworn affidavit McCarthy also states that she had only procured "gap insurance" through the end of June 2007 because she was under the impression she would receive health insurance benefits from FSM effective July 1, 2007.

On the same day she submitted her benefits application, McCarthy states that she began a leave of absence to obtain treatment, including surgery, for her lung cancer. The following morning, Friday, June 29, 2010, McCarthy and her sales manager, Pat Dennin ("Dennin"), met with FSM's President, Aaron Wilson ("Wilson").[2] McCarthy states the meeting was confusing to her, that Wilson indicated he was offering her a chance to work part-time, and that she understood this was to occur when she recovered sufficiently from surgery to return to work. She also states that Wilson told Dennin several times that he had been unaware of the fact that McCarthy was ill.

Wilson describes the meeting somewhat differently, stating that he was informed by McCarthy at the meeting that she would be unable to perform her job on a full-time basis and needed to take an extended time away from work. He also states that McCarthy

---

[2]The record is unclear as to why McCarthy was at FSM on the morning of June 29, 2007. She has stated in a declaration that she started her leave of absence the previous day. However, there is no dispute that the meeting with Wilson took place on Friday, June 29, 2007. Nor is it disputed that McCarthy worked for approximately six hours on July 3, 2007.

expressed concern that she would be fired and that he offered her the opportunity to work part time, on an hourly basis, until she could return to full-time work. He claims he offered the part-time employment without knowing that the day before McCarthy had applied for insurance benefits through the FSM sponsored benefits plan.

Later on that same morning, Diane Newlon ("Ms. Newlon"), a group benefits account executive from Principal, sent an e-mail to an FSM employee by the name of Robin Backus which stated as follows:

> The following employee was incorrectly entered onto the plan by the employer. She is not eligible for coverage at this time due to her scaling back to part-time hours before she became eligible for coverage. Nancy McCarthy ... [social security, DOB and address redacted]. Is there anyway to remove her from the system entirely? She is not eligible at this time, but should be eligible at some point in time. Please give me a call if you have any questions.

Nothing in the record informs the court how Ms. Newlon became aware of any change in McCarthy's work status or what role Robin Backus fulfills at FMS. Nevertheless, there is one further e-mail sent from Ms. Newlon to Tara Hibbard and another employee at FSM on the following Thursday, July 5, 2007. This e-mail states: "Nancy McCarthy will purge out of the Principal system at the end of the month per the administration department. It will be as if she never was entered. When she does become eligible for coverage you will need to re-enter her information."

McCarthy worked at FSM on Tuesday July 3, 2007, for six hours. That is the last time she was seen at FSM and the company states that it never had contact with her after

4

that date other than to inform her via letter that her position as well as others were eliminated in August of that year.

On July 6, 2007, McCarthy had surgery. She spoke on the telephone with a representative of Principal on July 10, 2007, and was informed that she had no medical benefits through FSM. Later in that telephone conversation, McCarthy claims she was informed that her application for enrollment in the FSM benefits program had been withdrawn on the same day that it had been entered into Principal's system. On August 20, 2007, FSM wrote to McCarthy, informing her that they were eliminating her job, as well as many other jobs, and that her leave of absence was over and the company would consider her a "released" employee going forward.

Nancy McCarthy has incurred more than $50,000 in medical bills from the treatment of her cancer. She has filed this lawsuit against FSM claiming the company has violated the Employee Retirement Income Security Act ("ERISA"). She first claims that FSM has violated Section 510 of ERISA, which makes it unlawful for anyone to discharge or otherwise take adverse action against an employee for exercising her rights under any employee benefit plan or for interfering with the attainment of any right to which she may have become entitled. 29 U.S.C.§ 1140. In addition to her claim under Section 510, McCarthy asserts that FSM violated Section 404, which requires fiduciaries of a plan to discharge their duties solely in the best interests of the participants in the plan. 29 U.S.C. § 1104.

## SUMMARY JUDGMENT STANDARD

Currently pending before the court are the parties' cross motions for summary judgment. In addressing cross motions for summary judgment, the court may grant summary judgment (in whole or in part) or deny (in whole or in part) either or both parties' motions. Though both parties assert entitlement to judgment, the standard for determining whether a summary judgment should issue in favor of either is unchanged from that which applies when only a single party has moved for the relief. Summary judgment is available if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine whether any genuine factual issue exists, the court examines the pleadings and the proof as presented in depositions, answers to interrogatories, admissions, and affidavits made a part of the record. *First Bank & Trust v. Firstar Information Services, Corp*., 276 F.3d 317 (7th Cir. 2001). The court draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). However, neither moving party may rest upon mere allegations in the pleadings or upon conclusory statements in an affidavit; rather, each must go beyond the pleadings to support their contentions with properly admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## DISCUSSION

FSM claims it is not a fiduciary and therefore it is entitled to summary judgment on McCarthy's Section 404 claim. In order to prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove: (1) that defendant is a plan fiduciary; (2) that defendant breached

its fiduciary duties; and (3) that the breach caused harm to the plaintiff. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). The first element, proof of fiduciary status, requires a showing that FSM exercises discretionary authority or control with respect to the management of the plan and its assets or with respect to the administration of the plan. 29 U.S.C. § 1002(21)(A).

McCarthy cites to no admissible evidence in the record which would credit her speculation that FSM exercised discretion in connection with the administration of the plan or, more specifically, made the determination as to whether or not she was eligible for coverage. She does offer her own affidavit testimony that she was told in a telephone conversation with a Principal representative that two computer entries were made on the same day, one approving her application and designating her a member and another terminating her membership in the plan. First, this affidavit testimony is hearsay and would not be admissible at trial, and inadmissible evidence will not overcome a summary judgment motion. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 533 (7th Cir. 2003); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). In addition, when reviewed closely, it is unclear from McCarthy's affidavit or deposition testimony whether she was told that someone at Principal or someone at FSM made the two entries into the system, one cancelling out the other.

Most importantly, entering information into a computer system is not indicative of a fiduciary role. *See Schmidt v. Sheet Metal Workers' National Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997). FSM has submitted admissible evidence that it is only responsible for entering data from an employee's application or other forms into a computer data system operated by

Principal and that Principal is responsible for all discretionary determinations. In addition to the affidavit testimony of the current FSM President and CEO, Aaron Wilson, who states that FSM has only a ministerial role of entering employee data into Principal's computer system, the group medical plan documents confirm that Principal exercises all discretionary authority with regard to plan administration and claims. Maintenance of records, preparation of employee communications and even application of eligibility or participation rules is not discretionary administrative activity which would confer fiduciary status on an employer. 29 C.F.R. § 2509.75-8. Accordingly, FSM is entitled to summary judgment on McCarthy's claim under Section 404 ERISA.[3]

That leaves McCarthy's Section 110 claim for discussion. She claims that FSM took two actions in violation of that section: (1) it designated her as a part-time employee so as to render her ineligible for health insurance benefits; and, (2) it terminated her employment so that she could never obtain the health insurance benefits. Much of the discussion in FSM's briefs is directed at the lack of any evidence which would establish that FSM eliminated McCarthy's position for any reason other than its stated reason: that at that point in time economic uncertainties in the market required the company to eliminate the jobs of many of its employees. FSM has provided affidavit and documentary evidence to establish that it eliminated the jobs of fifteen other employees at the same time that it eliminated McCarthy's job, all due to a

---

[3]McCarthy asserts in her brief that FSM could also be a fiduciary if it knows that a fiduciary has breached its duty, but does nothing to attempt to rectify the breach. She cites, in chain form, to 29 U.S.C. §§ 1002(21)(A), 1105(c)(1)(B) and 1105(a). However, for liability to attach through § 1105, a defendant must be a fiduciary to begin with. The section deals with fiduciaries who ignore breaches by other fiduciaries. It does not deal with obligations of parties who are not fiduciaries to start with.

tumultuous market in the industry FSM serves - the mortgage industry.  Indeed, the timing of FSM's reduction in its workforce coincides with the start of the widely-publicized problems with, and decline in, the United States mortgage industry.  McCarthy had not worked in any capacity for FSM for more than 45 days when her job was eliminated on August 20, 2007, and, admittedly, she had had no communication with anyone from the firm during that time period.  In short, McCarthy has no direct or circumstantial evidence to support her speculative contention that FSM had some ill intent when it eliminated her job.  Consequently, if the only action of FSM at issue were its elimination of McCarthy's position while she was on "leave," then her claim could be disposed of with little or no further discussion.

However, McCarthy also asserts that by shifting her to part-time status after she submitted her application for benefits, FSM violated Section 510 of ERISA.  Had she remained a full-time employee, McCarthy's eligibility for coverage would have started July 1, 2007.  Accordingly, the language from Section 510 that McCarthy asserts should apply to such a circumstance is that language which states that discriminating against a participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan" is unlawful.  29 U.S.C. § 1140.  In order to recover on a Section 510 interference claim, the employee must show that the employer engaged in prohibited conduct for the purpose of interfering with an employee's attainment of any right to which she may become entitled.  *May v. Shuttle, Inc.*, 129 F.3d 165, 169 (D.C. Cir. 1997); *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996); Berger v. Edgewater Steel Co., 911 F.2d 911, 922 (3d Cir. 1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

The first question that must be posed is whether moving an employee to part-time status is "prohibited conduct." The answer to that question is necessarily dependent upon the employer's intent. If FSM intended to move McCarthy to part-time status so that she could not become eligible for coverage under the group health insurance plan, then such an action would be prohibited by ERISA. Accordingly, an essential element of proof for a Section 510 plaintiff is a showing that the employer was, at least in part, motivated by the specific intent to interfere with an employee's attainment of rights under the plan. *See Larimer v. International Business Machines Corp.,* 370 F.3d 698, 702-03 (7th Cir. 2004); *Little v. Cox's Supermarkets,* 71 F.3d 637, 642 (7th Cir. 1995). McCarthy's evidence of specific intent is, at best, speculative.

As part of its "Statement of Undisputed Facts," FSM cites to Wilson's affidavit testimony wherein he states that at the meeting on June 29, 2007, McCarthy first informed him that she would not be able to perform her job on a full-time basis, would need an extended time away from the office, and expressed fear that she would be terminated. According to Wilson, he did not know that McCarthy had submitted an application for benefits at that point in time. He decided he would allow McCarthy to move to part-time status immediately and receive an hourly wage, equal pro rata to her salary, for as many hours as she was able to devote to her work. Wilson contends that his decision to allow McCarthy to move to part-time status was an effort to accommodate her inability to work full-time as opposed to an effort to prevent her from obtaining health insurance.

McCarthy disputes only that part of Wilson's rendition of the meeting that refers to her starting part-time immediately. She also questions the veracity of his statement of intent. She

says she found the meeting confusing, but understood that she would be moving to part-time employment following her return from a leave of absence to obtain surgery. She does not dispute that this meeting was the first time she indicated to Wilson that she could not work full-time or that she expressed a fear of being fired. She does not dispute that there was absolutely no discussion of her application for enrollment into the health insurance plan or benefits of any sort. Nor does she dispute that she did not work the following Monday, July 2, 2007, but did work for 6 hours on July 3, 2007. After that date, she admits that she never communicated further with FMS.

Intent can be shown through direct or circumstantial evidence. *Amrhein v. Health Care Service Corp.*, 546 F.3d 854, 858-59 (7th Cir. 2008). Direct evidence is generally unavailable because it would amount to an employer's admission of unlawful intent. *Id*. Typically, a plaintiff required to show intent does so through circumstantial evidence. *Id*. Here it is undisputed that when FSM placed McCarthy on part-time status, she no longer qualified for health insurance benefits. However, there is no ERISA cause of action for a loss of benefits that is a consequence of, but not a motivating factor for, an employer's action. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). McCarthy cannot simply rely on her own speculation that Wilson is lying, but must provide some evidence from which a trier of fact can infer that her employer's motivation was to thwart her effort to become eligible for benefits. *See Larimer*, 370 F.3d at 702-03. Typically, that might be done through an assortment of circumstantial evidence, starting with some evidence that McCarthy's obtaining eligibility for coverage would have a financial impact on FMS. *See Benders v. Bellows & Bellows,* 515 F.3d 757, 766 (7th Cir. 2008); *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995). While McCarthy apparently

presumes this to be the case, she provides no evidence to support a conclusion that FSM would have been financially impacted by her inclusion in the plan.

The Seventh Circuit has applied the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to ERISA Section 510 cases. *E.g., Isbell,* 418 F.3d at 796. In this case, the only circumstantial evidence McCarthy has to rely on is the timing of the decision to move her to part-time status. Suspicious timing may be enough to meet the minimal burden of establishing a prima facie case, but suspicious timing alone is generally insufficient to establish a genuine issue of material fact for trial under a *McDonnell Douglas* analysis. *Amrhein*, 546 F.3d at 859. That is especially true here where the timing of any decision to place McCarthy on part-time status was a product of McCarthy bringing to light her inability to work full-time and her desire to maintain her employment relationship with FSM despite her need for an extended leave. It is not as though FSM received McCarthy's application for benefits and, without an intervening revelation on her part, promptly decided to move her to part-time immediately. McCarthy's disclosure to Wilson on June 29, 2007, forced FSM to make some decision with regard to her continued employment. Without evidence that other employees who sought extended time off were treated more favorably (or even differently), or that there were financial considerations that came into play for FSM, the timing of McCarthy's retention as a part-time employee is nothing more than unfortunate, and FSM is entitled to summary judgmenton the Section 510 claim as well.

## CONCLUSION

For the reasons explicated in this entry, McCarthy's Motion for Summary Judgment

(Docket # 30) is **DENIED** and FSM's Motion for Summary Judgment (Docket # 45) is

**GRANTED**.  A separate final judgment in favor of FSM shall issue forthwith.

**SO ORDERED** this 31st  day of March 2010.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Brett Edward Buhl
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brett.buhl@odnss.com

Robert L. Clark
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
robert.clark@ogletreedeakins.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com